IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DANNY CARLSON, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| | Case No. 2:22-cv-00372-RJS-DBP |
| v. | |
| | Chief Judge Robert J. Shelby |
| CARRINGTON SQUARE LLC et al., | |
| Defendants. | Chief Magistrate Judge Dustin B. Pead |

Eight motions are before the court:

(1) Defendants the Law Offices of Kirk A. Cullimore, Kirk A. Cullimore, and David R. Todd's (Cullimore Defendants') Motion for Summary Judgment;[1]

(2) Defendants Carrington Square LLC, FourSite Property Management LLC, and Bach Homes LLC's (Carrington Defendants') Motion for Summary Judgment;[2]

(3) Plaintiff Danny Carlson's Motion for Summary Judgment Against the Cullimore Defendants;[3]

(4) Carlson's Motion for Summary Judgment Against the Carrington Defendants;[4]

(5) Carlson's Motion for Default Judgment Against Defendant Bach Homes LLC;[5]

(6) Carlson's Motion to Exclude Expert Dorey;[6]

---

[1] Dkt. 142, *Motion for Summary Judgment* (*Cullimore Defendants' Motion for Summary Judgment*).

[2] Dkt. 146, *Defendants Carrington Square, LLC, ForeSite Property Management, LLC, and Bach Homes, LLC's Motion for Summary Judgment* (*Carrington Defendants' Motion for Summary Judgment*).

[3] Dkt. 147, *Plaintiff's Motion for Summary Judgment as Against the Cullimore Defendants* (*Carlson's Second Motion for Summary Judgment Against the Cullimore Defendants*).

[4] Dkt. 150, *Motion for Summary Judgment* (*Carlson's Motion for Summary Judgment Against the Carrington Defendants*).

[5] Dkt. 153, *Motion for Default Judgment*.

[6] Dkt. 160, *Motion to Preclude Witness* (*Motion to Exclude Expert Dorey*).

(7) Carlson's Motion to Exclude Experts Mecham & Harris;[7] and

(8) the Carrington Defendants' Motion to Amend.[8]

For the reasons explained below, the court GRANTS the Cullimore Defendants' Motion for Summary Judgment,[9] GRANTS the Carrington Defendants' Motion for Summary Judgment, DENIES the Carrington Defendants' Motion to Amend, and DENIES Carlson's Motions.

## BACKGROUND

The court draws the following facts from the parties' summary judgment briefing and attached exhibits.  Because the court is considering cross-motions for summary judgment, it presents a neutral summary of the facts.[10]  Unless otherwise indicated, the facts are not in dispute.

This matter arises out of Plaintiff Danny Carlson's former tenancy at Carrington Square Apartments, an apartment complex owned by Defendant Carrington Square and operated by Defendant FourSite Property Management.[11]  FourSite has served as Carrington Square's

---

[7] Dkt. 166, *Motion to Preclude Witnesses* (*Motion to Exclude Experts Mecham & Harris*).

[8] Dkt. 217, *Defendants Carrington Square, LLC, FourSite Property Management, LLC, and Bach Homes, LLC's Motion to Amend Answer* (*Motion to Amend*).

[9] In their Motion for Summary Judgment, the Cullimore Defendants ask the court to award them "attorney fees incurred in defending this action as Plaintiff's claims are frivolous, not supported by any existing law and maintained only to harass and cause undue burden on the [Cullimore] Defendants."  *Cullimore Defendants' Motion for Summary Judgment* at 16.  The court denies the request for attorney fees without prejudice for failure to comply with Federal Rule of Civil Procedure 11 or Local Rule of Civil Practice (DUCivR) 54-2.

[10] *M.Z. v. Blue Cross Blue Shield of Ill.*, No. 1:20-cv-00184, 2023 WL 2634240, at *1 n.2 (D. Utah Mar. 24, 2023).

[11] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment*; *Carrington Defendants' Motion for Summary Judgment* at 6–7.  The court notes the parties dispute Defendant Bach Homes' role in Carlson's claims. The Carrington Defendants describe Bach Homes as "a residential construction company that had no interaction with the Carrington Apartments and did not own, manage or make decision regarding the Carrington Property.  To date, there is no evidence that Bach Homes played any role in the claims or causes of action alleged by Mr. Carlson."  *Carrington Defendants' Motion for Summary Judgment* at 4.  Carlson disputes this characterization and alleges Bach Homes "direct[ed]" the other Carrington Defendants to take certain actions.  *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 5.

property manager since 2018.[12]  Since 2012, Carrington Square has retained the Law Offices of Kirk A. Cullimore to assist with performing evictions and collections.[13]  Kirk A. Cullimore and David R. Todd are attorneys associated with the Law Offices of Kirk A. Cullimore.[14]

At the end of 2019, Carrington Square began a construction project to renovate all the apartments at the complex.[15]  Each apartment needed to remain vacant for about a month and a half to undergo remodeling.[16]  Construction sometimes occurred on a unit when a tenant opted not to renew his lease.[17]  On other occasions, a FourSite employee would deliver a "Notice to Vacate"[18] to a tenant.[19]  The Notice to Vacate alerted the tenant that Carrington Square would not be renewing his lease, and it required the tenant to vacate his apartment at the lease's conclusion.[20]  If a tenant whose lease was not renewed wished to continue living at Carrington Square, the Notice to Vacate indicated he could reapply for residency, "pending availability."[21]

Carlson lived in an apartment at Carrington Square between 2014 and 2021.[22]  He suffers from multiple sclerosis, which requires him to use a wheelchair.[23]  As a result of his condition,

---

[12] *See* Dkt. 146-2, Ex. 2, *Declaration of Taylor (Stephenson) Blair (Submitted in Opposition to Plaintiff's Motion for Summary Judgment)* (*Blair Declaration*) ¶ 19.

[13] *See* Dkt. 142-1, *David R. Todd's Affidavit and Agreement on Collection Work and Evictions* at 6–10.

[14] *See id.* ¶ 2; *see also* Dkt. 79, *Answer to Amended Complaint for Defendants Cullimore* ¶ 14.

[15] *Blair Declaration* ¶ 10.

[16] *Id.*

[17] *Id.*

[18] The parties dispute the title of this document.  *Compare Carrington Defendants' Motion for Summary Judgment* at 12 (referring to it as a "notice of non-renewal"), *with Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 32 (referring to it as a "Notice of Eviction").  The court refers to it and the accompanying letter by its title, "Notice to Vacate."  *See* Dkt. 146-5, Ex. 2, *Notice to Vacate.*

[19] *Blair Declaration* ¶ 10.

[20] *See Notice to Vacate.*

[21] *See id.*; *Blair Declaration* ¶ 11.

[22] Dkt. 82-1, *Plaintiff's Affidavit* (*Carlson's Affidavit*) ¶ 4.

[23] *Id.* ¶ 1.

Carlson receives government assistance to pay rent.[24]  Since 2018, when FourSite became the

property manager at Carrington Square, Carlson interacted with several FourSite employees,

including Taylor (Stephenson) Blair and Ashlee Potts.[25]

On May 7, 2021, Carlson fell while in his bathroom and subsequently underwent surgery

to repair broken bones in his leg.[26]  Carlson alleges the absence of grab bars in his bathroom

contributed to his fall, which Defendants dispute.[27]  He also alleges he verbally asked

Defendants to install grab bars on several occasions prior to his fall.[28]  Defendants contest this,

arguing Carlson not only failed to ask them for grab bars, but even if he had, his verbal requests

were insufficient under the operative Lease Agreement, which required such a request in

writing.[29]  Carlson admits he never requested grab bars in writing.[30]

On June 8, 2020, Carlson and a FourSite employee discussed potentially renewing his

lease or transferring him to a remodeled unit.[31]  Over a year later, on June 21, 2021, Carlson

received a Notice to Vacate.[32]  The attached letter offered Carlson "the option to transfer into a

newly remodeled apartment, pending availability."[33]  But Carrington Square had no wheelchair-

---

[24] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 4–5.

[25] *See* Dkt. 146-2, Ex. 3, *Resident Activity Log*.

[26] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 5.

[27] *See id.*; *Carrington Defendants' Motion for Summary Judgment* at 43–44.

[28] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 5.

[29] *See Carrington Defendants' Motion for Summary Judgment* at 14–15; *see also* Dkt. 146-1, *Residential Rental Agreement* at 74 ¶ 30.

[30] *Compare Carrington Defendants' Motion for Summary Judgment* at 15, *with Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 20 (not disputing Carrington Defendants' Statement of Undisputed Material Fact No. 25).

[31] *See Resident Activity Log* at 25.

[32] *Notice to Vacate*.

[33] *Id.*

accessible apartments available for Carlson to apply to at that time,[34] so he did not apply.[35] Another tenant had signed a Reservation Agreement for a unit suitable for Carlson just three days before Carlson received the Notice to Vacate.[36]  A FourSite employee asked this tenant if he would be willing to switch to a different apartment, but the tenant demurred.[37]

A FourSite employee also offered for Carlson to return to his original apartment sometime in mid-September of 2021 after they completed the remodel, but Carlson rejected that offer because he had nowhere to live in the interim.[38]  On July 28, 2021, Carlson's attorney asked a FourSite employee if Carlson could live in Carrington Square's fitness center.[39]  After that request was refused, Carlson brought suit in state court on July 29, 2021.[40]  Carlson vacated his apartment at Carrington Square on July 31, 2021.[41]

Carlson's claims against the Carrington Defendants arise from two incidents: first, their alleged refusal to install grab bars in Carlson's apartment bathroom, and second, his alleged "eviction," which he contends occurred "due to his disability and source of income."[42]  His

---

[34] *Blair Declaration* ¶ 15.

[35] *Compare Carrington Defendants' Motion for Summary Judgment* at 13, *with Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 17–18.

[36] *See* Dkt. 147-8, *Reservation Agreement*.

[37] *Id.* at 3.

[38] *Blair Declaration* ¶ 42; Dkt. 147-9, *Declaration of Danny Carlson in Support of Plaintiff's Motion for Summary Judgment as Against the Cullimore Defendants* (*Carlson's First Declaration*) ¶ 23.

[39] *Blair Declaration* ¶ 35.

[40] *Id.* ¶¶ 17–18; *see also* Dkt. 143-11, *State Court Complaint*.

[41] *Blair Declaration* ¶ 40.

[42] *See* Dkt. 70, *Amended Complaint* ¶¶ 67–71, 94–105.  The Carrington Defendants deny these allegations and allege they declined to renew Carlson's lease so necessary renovations could be performed.  *Compare id.* ¶ 69, *with* Dkt. 71, *Defendants Carrington Square, LLC, ForeSite Property Management, LLC, and Bach Homes, LLC's Answer to Plaintiff's Amended Complaint* ¶ 24.

claims against the Cullimore Defendants arise from their alleged facilitation of Carlson's lease termination and subsequent "eviction."[43]

## PROCEDURAL HISTORY

Carlson brought this action on June 6, 2022.[44]  On September 27, 2023, he filed an Amended Complaint in accordance with this court's Order granting him leave to amend.[45] Carlson asserts a variety of claims in his Amended Complaint, but at summary judgment,[46] only the following claims remain: (1) violations of the Utah Fair Housing Act (UFHA) and federal Fair Housing Act (FHA);[47] (2) third-party harassment; (3) violation of the Americans with Disabilities Act (ADA); (4) negligence; (5) negligent employment;[48] (6) breach of contract; (7) fraudulent misrepresentation; and (8) conspiracy.[49]  Carlson also argues in his summary

---

[43] *Amended Complaint* ¶¶ 72–77, 141, 170–75.  The court notes Carlson also alleges litigation misconduct by the Cullimore Defendants to support some of his claims.  *See Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 20–21.  The court addresses these allegations in its analysis of Carlson's claims.

[44] *See* Dkt. 5, *Complaint*.

[45] *See Amended Complaint*; Dkt. 68, *Minute Order*.

[46] Carlson filed his First Motion for Summary Judgment Against the Cullimore Defendants, Dkt. 82, on November 16, 2023, which the court denied without prejudice for failure to comply with Federal Rule of Civil Procedure 56 and DUCivR 56.  Dkt. 114, *Memorandum Decision and Order Denying Plaintiff's Motion for Summary Judgment*. In particular, the court found Carlson failed "to specifically cite evidence in support of each fact material to his claims," in part by "collectively cit[ing] multiple documents in their entirety."  *Id.* at 4.  The court also noted Carlson's Affidavit was inadmissible to the extent it did not rely on his personal knowledge.  *Id.*  The court admonished Carlson that, should he file a renewed motion for summary judgment, "it must comply with the Federal Rules of Civil Procedure and the Local Rules of Civil Practice for the District of Utah."  *Id.* at 5.  As the court describes below, Carlson's summary judgment briefing suffers from many of the same deficiencies as his first Motion.

[47] The court refers to these claims as Carlson's "fair housing" claims and the statutes as the "fair housing" statutes.

[48] Carlson asserts claims for "Negligent Hiring, Retention, Training, and Supervision" against the Carrington Defendants and claims for "Negligent Hiring, Retention & Supervision" against the Cullimore Defendants. *Amended Complaint* ¶¶ 209–26.  The court refers to these claims as Carlson's "negligent employment" claims.

[49] *See Amended Complaint*.  Carlson styles some of the claims he brings against both the Carrington Defendants and the Cullimore Defendants as distinct causes of action, which the court consolidates for ease of discussion.  Carlson also brought two causes of action solely against the Secretary of Housing and Urban Development, which this court previously dismissed.  Dkt. 137, *Docket Text Order Dismissing Claims Against the Secretary of Housing and Urban Development*.

judgment briefing that he brought several additional claims, which the court addresses separately.[50]

 The parties have filed Cross-Motions for Summary Judgment.[51]  Carlson has also filed a Motion for Default Judgment against Bach Homes for failure to comply with its discovery obligations,[52] as well as two additional Motions seeking to exclude testimony at trial by Defendants' experts.[53]  After oral argument, the Carrington Defendants filed a Motion to Amend their Answer.[54]  All Motions except for the Motion to Amend are fully briefed and ripe for review.[55]  The court heard oral argument on the Motions for Summary Judgment on March 20, 2025.[56]  The court begins its analysis by addressing the Motions for Summary Judgment and then turns to Carlson's additional Motions.

---

[50] *See infra* § IX.

[51] *Cullimore Defendants' Motion for Summary Judgment*; *Carrington Defendants' Motion for Summary Judgment*; *Carlson's Second Motion for Summary Judgment Against the Cullimore Defendants*; *Carlson's Motion for Summary Judgment Against the Carrington Defendants*.

[52] *Motion for Default Judgment*.

[53] *Motion to Exclude Expert Dorey*; *Motion to Exclude Experts Mecham & Harris*.

[54] *Motion to Amend*.

[55] *See* Dkt. 143, *Plaintiff's Opposition to Cullimore's Motion for Summary Judgment*; Dkt. 149, *Reply Memorandum in Support of the Law Office Defendants' Motion for Summary Judgment [Doc. 142]*; Dkt. 148, *Plaintiff's Opposition to Carrington Square's Motion for Summary Judgment*; Dkt. 168, *Defendants Carrington Square, LLC, ForeSite Property Management, LLC, and Bach Homes, LLC's Reply in Support of Motion for Summary Judgment*; Dkt. 175, *Memorandum Opposing Plaintiff's Motion for Summary Judgment as Against the Cullimore Defendants*; Dkt. 184, *Reply Affirmation*; Dkt. 188, *Defendants Carrington Square, LLC, FourSite Property Management, LLC, and Bach Homes, LLC's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment*; Dkt. 191, *Reply Affirmation*; Dkt. 154, *Defendants Carrington Square, LLC, ForeSite Property Management, LLC, and Bach Homes, LLC's Memorandum in Opposition to Plaintiff's* [sic] *Motion for Default Judgment Against Bach Homes, LLC* (*Default Opposition*); Dkt. 157, *Reply in Support of Motion for Default*; Dkt. 171, *Defendants Carrington Square, LLC, ForeSite Property Management, LLC, and Bach Homes, LLC's Memorandum in Opposition to Plaintiff's Motion to Preclude Witness*; Dkt. 182, *Reply Affirmation*; Dkt. 173, *Defendants Carrington Square, LLC, ForeSite Property Management, LLC, and Bach Homes, LLC's Memorandum in Opposition to Plaintiff's Motion to Preclude Witnesses*; Dkt. 183, *Reply Affirmation*.  The court does not need further briefing on the Motion to Amend, which it denies as moot for the reasons explained below.  *See infra* n.75.

[56] *See* Dkt. 215, *Minute Entry*.

## LEGAL STANDARD[57]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."[58] "Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of [his] case" for which he "has the burden of proof."[59] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[60] A fact is material if it "might affect the outcome of the suit under the governing law."[61] When applying this standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[62] In so doing, the court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[63]

A party opposing summary judgment cannot resist a summary judgment motion based only on what is in its pleadings.[64] Instead, the party must "set forth specific facts that would be admissible in evidence" at trial.[65] The specific facts "must be identified by reference to an

---

[57] "[A] federal court exercis[ing] supplemental jurisdiction over state law claims in a federal question lawsuit" must apply "the substantive law, including choice of law rules, of the forum state." *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (first quoting *Barrett v. Tallon,* 30 F.3d 1296, 1300 (10th Cir. 1994); and then citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)). Here, the court exercises supplemental jurisdiction over Carlson's state law claims. While the parties do not address in their briefing the choice of law question, Carlson's state law claims revolve around events that occurred in Utah, and both parties analyze them under Utah law. The court therefore assumes Utah law applies to Carlson's state law claims.

[58] Fed. R. Civ. P. 56(a).

[59] *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012) (internal quotation marks and citation omitted).

[60] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[61] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

[62] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[63] *Liberty Lobby*, 477 U.S. at 249.

[64] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986).

[65] *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks and citations omitted).

affidavit, a deposition transcript or a specific exhibit incorporated therein."[66]  If the nonmovant

fails to do so, then the moving party is "entitled to a judgment as a matter of law."[67]

"Cross-motions for summary judgment are to be treated separately; the denial of one does

not require the grant of another."[68]  Each "moving party carries the burden of showing beyond a

reasonable doubt that it is entitled to summary judgment."[69]  Even though a defendant "does not

have the ultimate burden of persuasion at trial," when moving for summary judgment, a

defendant has "both the initial burden of production . . . and the burden of establishing that

summary judgment is appropriate as a matter of law."[70]  This burden may be met by

demonstrating that the plaintiff "does not have enough evidence to carry [his] burden of

persuasion at trial."[71]  As to the plaintiff, the court "must view the evidence presented through

the prism of the substantive evidentiary burden."[72]

## ANALYSIS

The court begins by considering Defendants' Motions for Summary Judgment.

Defendants move for summary judgment on all of Carlson's claims.[73]  The court addresses each

cause of action in turn.

---

[66] *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).

[67] *Celotex Corp.*, 477 U.S. at 323.

[68] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[69] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).

[70] *Trainor*, 318 F.3d at 979 (citation omitted).

[71] *Id.*

[72] *Liberty Lobby*, 477 U.S. at 254.

[73] *See Carrington Defendants' Motion for Summary Judgment* at 1; *Cullimore Defendants' Motion for Summary Judgment* at 2.

## I.    Fair Housing

Carlson asserts several claims under the fair housing statutes.[74]  The court analyzes

Carlson's claims separately for each set of Defendants, beginning with the Carrington

Defendants and then turning to the Cullimore Defendants.

### A.  Carrington Defendants

The Carrington Defendants challenge whether Carlson has properly asserted standing to

pursue his fair housing claims, which the court addresses first.  It then turns to the Carrington

Defendants' arguments on the merits of Carlson's fair housing claims.[75]

#### 1.    Standing

The Carrington Defendants argue Carlson lacks Article III standing to assert his fair

housing claims.[76]  The court disagrees.

"The standing requirement is an 'irreducible constitutional minimum' that 'serv[es] to

identify those disputes which are appropriately resolved through the judicial process.'"[77]  In the

Tenth Circuit, standing for FHA claims "extends 'to the full limits' of Article III."[78]

Accordingly, to satisfy standing requirements, a plaintiff must show "(1) actual or threatened

---

[74] *See Amended Complaint* ¶¶ 112–37.

[75] The Carrington Defendants also argue the statute of limitations precludes Carlson's fair housing claims.  *See Carrington Defendants' Motion for Summary Judgment* at 40–41.  In response, Carlson argues the Carrington Defendants waived this defense by failing to raise it in their Answer.  *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 35–36.  After oral argument, the Carrington Defendants moved to amend their Answer to assert this defense.  *See Motion to Amend.*  The court declines to reach this issue because it finds Carlson's fair housing claims fail on other grounds.  It therefore denies the Carrington Defendants' Motion to Amend as moot.

[76] *See Carrington Defendants' Motion for Summary Judgment* at 26–28.  The Utah Supreme Court analyzes standing under the UFHA in a manner identical to the FHA.  *See Malibu Inv. Co. v. Sparks*, 996 P.2d 1043, 1049–50 (Utah 2000).

[77] *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[78] *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1497 (10th Cir. 1995) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)).

injury; (2) a causal connection to the conduct complained of; and (3) redressability of the injury by the requested relief."[79]  "[A] mere abstract denial of equal opportunity does not constitute injury in fact.  A general denial of equal opportunity does not confer standing on a particular individual unless that individual would have had access to the benefit at stake in the absence of discrimination."[80]  "The party invoking federal jurisdiction 'bears the burden of establishing standing as of the time it brought [the] lawsuit and maintaining it thereafter.'"[81]

The Tenth Circuit addressed standing in the FHA context in *Wilson v. Glenwood Intermountain Properties, Inc*.[82]  In *Wilson*, two individuals sued a group of landlords for owning, operating, and advertising gender-segregated housing for Brigham Young University students.[83]  The landlords denied the male plaintiff housing in an apartment reserved for women and the female plaintiff housing in an apartment reserved for men.  However, neither plaintiff was a BYU student.[84]  The district court entered summary judgment in favor of the landlords, concluding the plaintiffs "failed to establish a prima facie case . . . because, as non-students, they were not otherwise qualified for apartments reserved for students."[85]

On appeal, the Tenth Circuit vacated the judgment and remanded with instructions to dismiss for lack of standing because the plaintiffs "have not shown the required causal relationship or the likelihood that a favorable decision would redress the injury."[86]  The Tenth

---

[79] *Id.* at 1497.

[80] *Wilson v. Glenwood Intermountain Props., Inc*., 98 F.3d 590, 594 (10th Cir. 1996) (alteration in original) (quoting *N.A.A.C.P., Boston Chapter v. Harris*, 607 F.2d 514, 520 (1st Cir. 1979)).

[81] *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020))**.**

[82] 98 F.3d 590.

[83] *Id.* at 592.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 593, 597.

Circuit recognized that a person "claiming discrimination in the denial of a benefit need not show they would have obtained the benefit in the absence of the discrimination to establish standing; it is enough to show the discrimination deprived them of the ability to compete for the benefit on an equal footing."[87]  At the same time, the court concluded a person's failure to satisfy "lawful, nondiscriminatory requirements or qualifications for the benefit" deprives that individual of standing because (1) causation cannot be proved where the discrimination itself did not cause the deprivation of the benefit, and (2) redressability is absent where "the person would still be disqualified from competing" even after receiving a favorable decision.[88]

Applying these principles to the facts, the *Wilson* court held the plaintiffs lacked standing because they would not have been eligible for student housing.  Noting that the FHA "does not make it unlawful for landlords to give preference to college students over non-students,"[89] the court concluded non-students seeking relief from gender-segregated housing lacked standing "because even in the absence of the challenged gender discrimination they would not have qualified to rent the student apartments."[90]

In this case, the Carrington Defendants argue Carlson lacks standing under *Wilson* for three reasons:

> 1) he failed to reapply for an apartment at Carrington in order to seek a new lease agreement, 2) he failed to show that an apartment that met his particular needs was available to rent to him by Carrington, and 3) he has failed to show that Carrington had any obligation to renew his 2020-2021 Lease Agreement for another year.[91]

---

[87] *Id.* at 593 (citation omitted).

[88] *Id.*

[89] *Id.*

[90] *Id.*; *see also Day v. Bond*, 500 F.3d 1127, 1134–35 (10th Cir. 2007) (discussing *Wilson*'s holding).

[91] *Carrington Defendants' Motion for Summary Judgment* at 28.

The court concludes Defendants are not entitled to summary judgment under *Wilson*. In that case, the applicants could not establish causation or redressability because they were not students and never would have qualified for the housing sought. As a result, the alleged discrimination could not deprive the applicants "of the ability to compete for the benefit on an equal footing."[92] In contrast, Defendants do not dispute that Carlson qualifies to apply and obtain housing at Carrington Square.[93] And Carlson alleges Defendants discriminated against him by not renewing his lease when no suitable, wheelchair-accessible apartments were available.[94] That is, Carlson argues he would have obtained housing *but for* the Carrington Defendants' alleged conduct preventing him from applying because of his disability—so Carlson's failure to apply for housing cannot then also deprive him of standing.[95] The court agrees. If the Carrington Defendants withheld a suitable apartment from Carlson because he was disabled, then the lack of availability *itself* is a redressable harm.

For these reasons, Carlson alleges he suffered an injury fairly traceable to the Carrington Defendants' alleged discriminatory conduct that would likely be redressed by a favorable decision. He therefore has standing.

## 2. Fair Housing Claims Analytical Framework

The court now turns to the merits of Carlson's fair housing claims. The fair housing statutes prohibit discriminatory housing practices based on a renter's disability.[96] The types of prohibited discrimination include, among others: (1) disparate treatment (i.e., intentional

---

[92] *Wilson*, 98 F.3d at 593.

[93] *See Carrington Defendants' Motion for Summary Judgment* at 13 (stating Carlson "was invited to reapply for an apartment at Carrington").

[94] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 30–31.

[95] *See id.*

[96] *Compare* 42 U.S.C. § 3604(f), *with* Utah Code § 57-21-5 (using nearly identical language).

discrimination); (2) disparate impact (i.e., "the discriminatory effect of a facially neutral practice or policy"); (3) "a 'refusal to make reasonable accommodations in rules, policies, practices, or services'"; and (4) "a refusal to permit 'reasonable modifications of existing premises.'"[97]  The Carrington Defendants' address each of these claims, and the court considers each in turn.

### i.    Disparate Treatment

The Carrington Defendants argue Carlson has failed to establish disparate treatment.[98] Carlson responds by arguing "Defendants discriminated against [Carlson] facially and explicitly."[99]  The court agrees with Defendants.

To establish a disparate treatment claim, a plaintiff must either show: "(1) direct evidence of discriminatory intent or (2) circumstantial evidence under the *McDonnell Douglas* burden-shifting framework."[100]  "Direct evidence of discrimination is evidence which, if believed, proves that the decision in the case at hand was discriminatory—and does so without depending on any further inference or presumption."[101]  Circumstantial evidence is evidence suggesting the defendant acted "*because of*" a plaintiff's disability.[102]  Such evidence must either demonstrate the defendant granted relief "to similarly situated [individuals] without disabilities" or show the circumstances "support a reasonable inference" that the defendant would have.[103]  When a

---

[97] *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1272–73 (10th Cir. 2001) (quoting 42 U.S.C. § 3604(f)).

[98] *See Carrington Defendants' Motion for Summary Judgment* at 34–35.

[99] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 28 (capitalization altered).

[100] *Courage to Change Ranches Holding Co. v. El Paso Cnty.*, 73 F.4th 1175, 1193 (10th Cir. 2023) (citing *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012)).

[101] *Cinnamon Hills*, 685 F.3d at 919.

[102] *Id.* at 920.

[103] *Id.*

plaintiff uses circumstantial evidence to prove disparate treatment, the court applies the *McDonnell Douglas* burden-shifting framework.[104]

Under *McDonnell Douglas*, the plaintiff must initially present sufficient evidence of a prima facie case of discrimination.[105]  Once he has done so, the burden shifts to the defendant to produce evidence that the alleged discriminatory housing activities were "motivated by legitimate, [nondiscriminatory] considerations."[106]  If the defendant proffers evidence of nondiscriminatory reasons, "the burden shifts back to plaintiff to show that the proffered reasons were pretextual."[107]

The Carrington Defendants argue no disparate treatment occurred because they treated Carlson like every other tenant.[108]  Carlson contends disparate treatment occurred because the Carrington Defendants timed the non-renewal of Carlson's lease to coincide with a period where no wheelchair-accessible apartments were available, forcing Carlson to move out—all because of his disability.[109]

While not explicitly addressed by the parties, the court finds Carlson has not put forth direct evidence of discrimination.  No admissible evidence in the record allows the court to conclude Defendants' behavior was discriminatory "without depending on any further inference or presumption,"[110] and so the court turns to whether Carlson provides sufficient circumstantial evidence to make out a prima facie case of disparate treatment.

---

[104] *Id.*

[105] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[106] *Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254–55 (1981)).

[107] *Id.* (citing *Burdine*, 450 U.S. at 256).

[108] *Carrington Defendants' Motion for Summary Judgment* at 34–35.

[109] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment*.

[110] *Cinnamon Hills*, 685 F.3d at 919.

The court finds he has not.  Carlson does not point the court to any admissible evidence suggesting Defendants treated Carlson differently than any other tenant or refused to renew his lease "because of" his disability.[111]  But even assuming Carlson could make out a prima facie case of discrimination, the Carrington Defendants have provided ample non-discriminatory rationale for their actions:

> Carrington did not enact a policy that singled out handicapped individuals and nor did it apply rules differently to them.  Instead, Carrington enacted a neutral policy that applied to everyone.  Every apartment in Carrington was being remodeled. Every resident in Carrington whose lease was not voluntarily terminated by the resident received a proper and timely Notice to Vacate.  Every resident was given the opportunity to reapply for residence at Carrington, "pending availability" of an apartment.[112]

Carlson does not put forth any evidence controverting these assertions, and to the extent he objects to them, his objections are overruled.[113]  The court also finds persuasive the following undisputed facts:

---

[111] To the extent Carlson attempts to support his fair housing claims with his sworn statements, the court agrees with the Carrington Defendants that significant portions of these statements consist of speculation and inadmissible hearsay.  *See Carlson's First Declaration*; Dkt. 150-1, *Plaintiff's Declaration in Support of Summary Judgment* (*Carlson's Second Declaration*); *Carlson's Affidavit.*

[112] *Carrington Defendants' Motion for Summary Judgment* at 34–35.

[113] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 16–22.  Objecting to speculation, Carlson argues Ashlee Potts' Declaration is insufficient to establish Carrington Square (1) required other tenants to "reapply for residency" or (2) allowed other tenants to move into remodeled apartments.  *See id.* at 17.  The court finds Carlson's objection unpersuasive because Potts provided the basis for her personal knowledge, *see* Dkt. 146-5, *Declaration of Ashlee Potts (Submitted in Opposition to Plaintiff's Motion for Summary Judgment)* ¶¶ 3–4, and Carlson declined to depose Potts during fact discovery, *see Carrington Defendants' Reply to Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 14–15.  Carlson also disputes the Carrington Defendants' assertion that he "was invited to reapply for an apartment at Carrington," alleging, "he was never invited to reapply."  *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 17. This is false.  The plain language of the Notice to Vacate, which Carlson does not dispute he received, states, "We would be happy to offer you the option to transfer into a newly remodeled apartment, pending availability."  *Notice to Vacate*.  There is no contradiction here; just because no wheelchair-accessible apartments were available for Carlson at the time his lease expired does not contradict the fact that he received the Notice to Vacate.  While Carlson argues he "was not treated the same as other tenants because Defendants failed to offer him the same or substantially the same probability of opportunity of reapplying," *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 30, he does not point to any facts supporting this contention.

- Carlson lived at Carrington Square for almost seven years;[114]

- The remodeling project affected every apartment at Carrington Square;[115] and

- A FourSite employee asked a tenant "if he would move to another apartment on the second floor to allow Mr. Carlson to occupy the ground floor apartment."[116]

These undisputed facts undermine any inference that the Carrington Defendants discriminated against Carlson. Under *McDonnell Douglas*, Carlson must demonstrate the Carrington Defendants' proffered reasons for its actions are pretextual. He does not. "[W]eaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the "proffered legitimate reasons" for a defendant's actions can demonstrate pretext.[117] Here, the Carrington Defendants' proffered reason for terminating Carlson's lease is the ongoing construction affecting every unit at the apartment complex. Carlson concedes the existence of the construction project throughout his briefing and specifically admits it affected every unit.[118] It therefore cannot be implausible or inconsistent that, at some point, Carlson's lease would not be renewed because of the construction. And because Carlson lived at Carrington Square for seven years, and a FourSite employee, while unsuccessful, attempted to procure a different apartment for him, it is vanishingly unlikely that Defendants' proffered reason for not renewing Carlson's lease was pretextual.

---

[114] *Compare Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 16–22, *with Carrington Defendants' Motion for Summary Judgment* at 6.

[115] *Compare Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 16–22, *with Carrington Defendants' Motion for Summary Judgment* at 12.

[116] *See Carrington Defendants' Motion for Summary Judgment* at 30; *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 32 n.87.

[117] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted) (quoting *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951–52 (3d Cir. 1996)).

[118] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 5.

The court therefore finds Carlson has failed to establish a fair housing disparate treatment claim.

### ii.    Disparate Impact

The Carrington Defendants argue Carlson has failed to establish disparate impact.[119] Carlson counters by maintaining the Carrington Defendants failed to disclose necessary information during discovery.[120]  The court agrees with Defendants.

"To prove a case of disparate impact discrimination, the plaintiff must show that 'a specific policy caused a significant disparate effect on a protected group.'"[121]  This is generally demonstrated with statistical evidence.[122]  Once the plaintiff has established a prima facie disparate impact case, the defendant must "produce evidence of a genuine business need for the challenged practice."[123]  The court then weighs the disparate impact against the defendant's justifications by considering three factors:

> (1) the strength of the plaintiff's showing of discriminatory effect; (2) the defendant's interest in taking the action complained of; and (3) whether the plaintiff seeks to compel the defendant affirmatively to provide housing for members of a protected class or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing.[124]

As applied here, Carlson does not support his claim with any statistical evidence or any other evidence tending to show Defendants' policies had a significant disparate effect on disabled individuals.[125]  He argues he "was not treated the same as other tenants because Defendants

---

[119] *See Carrington Defendants' Motion for Summary Judgment* at 35–37.

[120] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 33.

[121] *Cinnamon Hills*, 685 F.3d at 922 (quoting *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007)).

[122] *Id.* (citing *Mountain Side Mobile Ests. P'ship v. Sec'y of Hous. & Urb. Dev.*, 56 F.3d 1243, 1253 (10th Cir. 1995)).

[123] *Reinhart*, 482 F.3d at 1229 (quoting *Mountain Side*, 56 F.3d at 1254).

[124] *Id.* (quoting *Mountain Side*, 56 F.3d at 1252).

[125] *See generally Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment*.

failed to offer him the same or substantially the same probability of opportunity of reapplying."[126]  But Carlson provides no citation to the factual record to support this proposition.[127]

Even assuming Carlson had presented a prima facie case of disparate impact, the court finds the Carrington Defendants' justifications outweigh his disparate impact concerns.  The strength of any discriminatory effect that Carlson has alleged is limited to only himself—he has provided no evidence suggesting other disabled individuals were unable to rent apartments at Carrington Square or were subjected to any other form of housing discrimination.  Carlson also admits the Carrington Defendants had a substantial interest in proceeding with the renovations because the apartment complex had not been remodeled since 1998.[128]  And the third factor, to the extent it is relevant in this case, also weighs in favor of Defendants because Carlson sought to compel Defendants to offer him housing in a unit already leased to another individual or in the complex's fitness center.[129]

For these reasons, the court finds Carlson fails to establish a fair housing disparate impact claim.

### iii.   Failure to Accommodate and Failure to Permit a Reasonable Modification

The court construes Carlson's Amended Complaint as asserting a failure to accommodate claim and a failure to permit a reasonable modification claim against the Carrington

---

[126] *Id.* at 30.

[127] Carlson also argues the Carrington Defendants' alleged failure to turn over necessary evidence in discovery should preclude summary judgment in their favor.  *Id.* at 33.  The court considered Carlson's arguments on this issue in its Orders on his Motions to Compel, and it will not reconsider them here.  *See, e.g.*, Dkt. 216, *Memorandum Decision and Order Overruling Plaintiff's Objection to Magistrate Judge's Order.*  Carlson's failure to timely seek adjudication of his discovery disputes cannot be relitigated at this stage of the proceedings.

[128] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 5.

[129] *See id.* at 11; *Blair Declaration* ¶ 35.

Defendants.[130]  In their briefing, the parties conflate their arguments with respect to these claims.[131]  But this is improper because the claims are distinct.[132]  Under the fair housing statutes, unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" and "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises . . . if such modifications may be necessary to afford such person full enjoyment of the premises."[133]  "[A] reasonable *modification* is a structural change made to the premises whereas a reasonable *accommodation* is a change, exception, or adjustment to a rule, policy, practice or service."[134] As applied to this case, Carlson may properly assert a reasonable accommodation claim with respect to the circumstances surrounding the non-renewal of his lease because he alleges he requested "a change, exception, or adjustment to a rule, policy, practice or service."  And he may properly assert a reasonable modification claim with respect to his alleged requests for grab bars because that "is a structural change made to the premises."

The court begins by evaluating Carlson's failure to accommodate claim.  Unlike other fair housing claims, there is no burden-shifting analysis under *McDonnell Douglas* in a failure to

---

[130] The court notes Carlson appears to only assert a failure to accommodate claim in his Amended Complaint; the words "modification" or "modify" do not appear.  *See Amended Complaint* ¶ 124.  But because the parties argue both a failure to accommodate claim and a failure to permit a reasonable modification claim, the court conducts its analysis accordingly.

[131] *See Carrington Defendants' Motion for Summary Judgment* at 37 (discussing "reasonable modifications" in their failure to accommodate argument); *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 18 ("Defendants . . . refused to afford him a reasonable accommodation/modification . . . ."); *id.* at 37 (discussing Carlson's "right to request a reasonable accommodation and/or modification").

[132] *See Smith v. Cedars, Inc.*, No. 2:12-cv-667-TS, 2013 WL 5819342, at *4 (D. Utah Oct. 29, 2013).

[133] 42 U.S.C. § 3604(f)(3)(A)–(B); *see also* Utah Code § 57-21-5(4)(a)–(b) (using language nearly identical to the FHA).

[134] *Smith*, 2013 WL 5819342, at *4 (citation omitted).

accommodate claim because it does not require evidence of intent.[135]  It is "a different sort of animal," that "does not require the plaintiff to prove that the challenged policy intended to discriminate or that in effect it works systematically to exclude the disabled."[136]  To prove a failure to accommodate claim, a plaintiff must show: (1) he suffers from a disability; (2) the defendant knew or reasonably should have known of the plaintiff's disability; (3) the plaintiff needs an accommodation to have an equal opportunity to use and enjoy his dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation.[137]  The Tenth Circuit has explained, "[w]hile the FHA requires accommodations necessary to ensure the disabled receive the *same* housing opportunities as everybody else, it does not require *more* or *better* opportunities."[138]

Carlson's failure to accommodate claim cannot survive summary judgment for two reasons.  First, he has failed to point to any evidence in the record suggesting his requested accommodations were "necessary" to afford him "equal opportunity to use and enjoy" his apartment.  That alone is sufficient to grant Defendants summary judgment on Carlson's failure to accommodate claim.[139]

Second, even if Carlson had provided evidence, he explicitly argues he asked to be treated differently:

> Plaintiff requested a reasonable accommodation in the alteration of [the lease] terms applied "equally" to every other party (allegedly).  Danny requested that he be able to relocate to another apartment before he was evicted; he also requested permission

---

[135] *Cinnamon Hills*, 685 F.3d at 922–23.

[136] *Id.*

[137] *Haws v. Norman*, No. 2:15-cv-00422-EJF, 2017 WL 4221064, at *4 (D. Utah Sept. 20, 2017) (citing *Arnal v. Aspenview Condo. Ass'n*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016)); *see also Courage to Change*, 73 F.4th at 1204.

[138] *Cinnamon Hills*, 685 F.3d at 923.

[139] *See Adler*, 144 F.3d at 671.

> to stay several more days in an effort to locate a home to live; he asked to be treated differently based on his disability and Source of Income and Defendants refused him that "reasonable accommodation" in their policies, rules and procedures, that would have prevented his eviction and ultimate relocation.[140]

Carlson's admissions here are dispositive. The fair housing acts do "not require *more* or *better* opportunities,"[141] but Carlson admits he asked to be "treated differently" by seeking benefits from Defendants not afforded to anyone else. This goes beyond what is required by the fair housing statutes. Carlson has therefore failed to establish a failure to accommodate claim.

The court now turns to Carlson's failure to permit a reasonable modification claim. While the Tenth Circuit has not considered the issue, the court finds a burden-shifting analysis is also improper when evaluating a reasonable modification claim because it does not require evidence of intent.[142] To prevail, Carlson must show: (1) the defendant refused to permit the modification and (2) the modification was necessary.[143] Further, a "landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification . . . ."[144]

The Carrington Defendants argue summary judgment is appropriate because "Carlson admits that he was asked if he would restore the premises to the original condition and he never answered the question."[145] In response, Carlson argues the fair housing statutes' "'conditional modification' language does not speak to conditions that are required to exist under the law, but

---

[140] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 30.

[141] *Cinnamon Hills*, 685 F.3d at 923.

[142] *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 540–41 (6th Cir. 2014) ("The *McDonnell Douglas* test is similarly ill-suited for analysis of an FHA reasonable-modification claim.").

[143] *Haycraft v. Fid. Mgmt. Corp.*, No. CIV.A. 13-1254-MLB, 2014 WL 3361759, at *3 (D. Kan. July 9, 2014) (citing 42 U.S.C. § 3604(f)(3)(A)).

[144] 42 U.S.C. § 3604(f)(3)(A).

[145] *See Carrington Defendants' Motion for Summary Judgment* at 38; *see also Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 22 (conceding the Carrington Defendants' Statement of Fact No. 38).

which Defendants failed to permit at the outset."[146]  The court takes this to mean Carlson contends the Carrington Defendants are necessarily exposed to liability for their failure to have grab bars installed for the duration of Carlson's lease.  While Carlson has not cited any legal authority suggesting the Carrington Defendants had a duty to do so, which alone is dispositive, the court additionally concludes any such duty is outside the scope of a failure to permit a reasonable modification claim.  And because Carlson does not contest the fact that he never agreed to restore the apartment to its prior condition, the court finds Carlson has failed to establish a failure to permit a reasonable modification claim.

For the reasons stated above, the court finds Carlson has failed to establish liability on any of his fair housing claims with respect to the Carrington Defendants.  The court therefore grants summary judgment to the Carrington Defendants on all of Carlson's fair housing claims.

## B.  Cullimore Defendants

The court now considers Carlson's fair housing claims with respect to the Cullimore Defendants.  It addresses these Defendants' arguments separately because the parties' briefing does not address theories of disparate treatment or disparate impact.

The Cullimore Defendants primarily argue Carlson's fair housing claims fail because Defendants "are not covered by" the fair housing statutes and, even if they were, they did not engage in any violations.[147]  The Cullimore Defendants contend they have not "refused to rent" to Carlson, "refused to negotiate for rental" with him, or "otherwise ma[de] unavailable a dwelling" because they "do not rent to anyone," as they are a law firm and its attorneys, not a housing provider.[148]  For the same reason, the Cullimore Defendants argue they "never received

---

[146] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 34.

[147] *See Cullimore Defendants' Motion for Summary Judgment* at 2.

[148] *Id.* at 8–9.

a reasonable accommodation request from Plaintiff, nor have they refused to make such an accommodation"[149] or reasonable modification.[150]  In support of these arguments, they rely on David R. Todd's Affidavit.[151]  In opposition, Carlson does not dispute the following facts submitted by the Cullimore Defendants:

- At no point did Carlson ask to rent any property from the [Cullimore] Defendants.

- At no point did the [Cullimore] Defendants refuse to rent a dwelling to Plaintiff.

- The [Cullimore] Defendants did not refuse to negotiate a rental with Plaintiff.

- At no point did the [Cullimore] Defendants refuse to permit Carlson any reasonable modification to any dwelling.

- At no point did the [Cullimore] Defendants refuse to make any reasonable accommodations in rules, policies, practices, or services of any dwelling.

- Plaintiff never made any reasonable accommodation request or reasonable modification request to the [Cullimore] Defendants.

- The [Cullimore] Defendants have never communicated directly with Plaintiff outside of this litigation.

- Because the [Cullimore] Defendants do not provide housing or rental services, the [Cullimore] Defendants have no policies, procedures, practices or rules to provide rental services.[152]

These admissions are dispositive.  When one party fails to "address another party's assertion of fact" at summary judgment, the court may "consider the fact undisputed for purposes of the

---

[149] *Id.* at 8.

[150] *Id.* at 5.

[151] *Id.* at 3–7; *see also David R. Todd's Affidavit and Agreement on Collection Work and Evictions.*

[152] *Compare Cullimore Defendants' Motion for Summary Judgment at 4–5, with Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 3–6.

motion."[153]  Carlson not only admits these facts but also fails to provide the court with any legal authority suggesting the Cullimore Defendants are liable on his fair housing claims.[154]

Carlson had an obligation to "make a sufficient showing" on each "essential element of [his] case" in opposition to the Carrington Defendants' Motion for Summary Judgment.[155]  He has not done so.  He fails even to set out what the "essential element[s]" of his fair housing claims are with respect to the Cullimore Defendants.[156]  Under these circumstances, the Cullimore Defendants have persuaded the court that Carlson is unable to make a sufficient showing on his fair housing claims because he cannot demonstrate a violation of either statute. The Cullimore Defendants are therefore entitled to summary judgment on all of Carlson's fair housing claims.

## II.    Third-Party Harassment

Carlson brings a claim for "third-party harassment" against all Defendants.[157]  The parties dispute which analytical framework the court should use to evaluate this claim, assuming

---

[153] *See* Fed. R. Civ. P. 56(e).

[154] In opposition, Carlson alleges, "[r]ather than direct their clients to offer Plaintiff a reasonable accommodation in accordance with Fair Housing, the [Cullimore] Defendants directed their clients to commence an eviction proceeding against Plaintiff in violation of Fair Housing."  *Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 5.  But Carlson provides no legal authority to support the proposition that a law firm advising its client to commence eviction proceedings against a holdover tenant violates the fair housing statutes. Carlson also alleges, "Despite Plaintiff's request to relocate, Defendants failed to offer Plaintiff, one of the longest-tenured tenants, a reasonable accommodation, i.e., the opportunity to relocate to another wheelchair accessible apartment, prior to issuing a Notice of Non-Renewal of his Lease on June 21, 2021."  *See id.* at 10.  Carlson cites to the Notice to Vacate and the Resident Activity Log, but he does not explain how those exhibits support the proposition that he requested a reasonable accommodation and was denied one by the Cullimore Defendants specifically.

[155] *Celotex Corp.*, 477 U.S. at 323.

[156] Carlson articulates a legal standard to evaluate his "third-party harassment" claim, *see Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 20, but the court evaluates this claim separately, *see infra* § II.

[157] *See Amended Complaint* ¶¶ 138–44.  The court notes Carlson purports to bring this claim under the FHA.  *See id.* As the court has already determined, summary judgment in favor of Defendants on all of Carlson's fair housing claims is appropriate.  However, because Carlson styles this claim as separate from his other causes of action and the parties address it under a distinct framework, the court conducts an additional analysis.

it exists.[158]  In their Motions for Summary Judgment, both the Carrington Defendants and the Cullimore Defendants analyze Carlson's claim under the test used in *Jackson v. Park Place Condominiums Ass'n*.[159]  Carlson's position, on the other hand, is not entirely clear.  In his Opposition to the Cullimore Defendants' Motion for Summary Judgment, he cites to *Harsco Corp. v. Renner*,[160] a precursor to *Jackson*.  But he also appears to adopt the *Jackson* test in his Opposition to the Carrington Defendants' Motion for Summary Judgment.[161]  And he refers[162] to a test articulated in *Haws v. Norman*[163] for analyzing FHA retaliation claims but subsequently rejected by the Tenth Circuit.[164]

Here, the court will use the *Jackson* test to evaluate Carlson's third-party harassment claim for two reasons.  First, Carlson does not dispute, and even appears to adopt, Defendants' suggestion to examine the claim under *Jackson*.[165]  Second, the facts alleged by Carlson track the facts in *Jackson*, where a black woman sued a condominium association for racial discrimination, asserting it created a hostile housing environment.[166]

---

[158] The Cullimore Defendants assert Carlson's claim for third-party harassment "does not exist under current law." *Cullimore Defendants' Motion for Summary Judgment* at 11.  The court's review of the fair housing statutes and the case law interpreting them does not reveal the existence of a claim for third-party harassment in the Tenth Circuit or any other.  A Second Circuit panel decision establishing a claim for third-party harassment under the FHA was vacated by the en banc court.  *See Francis v. Kings Park Manor, Inc.*, 917 F.3d 109, 121 n.9 (2d Cir. 2019), *vacated on reh'g en banc*, 992 F.3d 67 (2d Cir. 2021).

[159] 619 F. App'x 699, 703 (10th Cir. 2015).  *See Cullimore Defendants' Motion for Summary Judgment* at 10; *Carrington Defendants' Motion for Summary Judgment* at 41.

[160] 475 F.3d 1179, 1186 (10th Cir. 2007); *Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 20.

[161] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 36.

[162] *Id.*

[163] 2017 WL 4221064, at *8 & n.5.

[164] *See Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379, at *8 (10th Cir. July 6, 2022).

[165] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 36–37.

[166] *Jackson*, 619 F. App'x at 701–03.

Under *Jackson*, Carlson therefore must make a prima facie showing of the following elements to prove a third-party harassment claim: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class, and (4) the harassment was so severe, pervasive, or abusive that it unreasonably interfered with his use and enjoyment of the premises.[167]

The Carrington Defendants argue Carlson's third-party harassment claim fails "because he was not subjected to severe, actionable harassment."[168]  Carlson responds by contending Defendants subjected him to severe harassment by constructively evicting him, threatening to evict him, threatening to bring an "unlawful detainer" action against him, improperly serving him with the Notice to Vacate, and threatening his attorney with sanctions.[169]  In reply, the Carrington Defendants note, "Carlson has provided no legal basis for claiming that any of the alleged actions constituted unwelcomed harassment or would constitute harassment" sufficiently "severe, pervasive or abusive."[170]

The court agrees with Defendants.  In opposing summary judgment, Carlson had the obligation to "make a sufficient showing" on each "essential element of [his] case"[171] by going beyond his Amended Complaint and "set[ting] forth specific facts"[172] "identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[173]  But Carlson

---

[167] *Id.* at 703.

[168] *Carrington Defendants' Motion for Summary Judgment* at 41; *see also Cullimore Defendants' Motion for Summary Judgment* at 10–11.

[169] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 37; *Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 20–21.

[170] *Carrington Defendants' Reply to Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 32.

[171] *Celotex Corp.*, 477 U.S. at 323.

[172] *Adler*, 144 F.3d at 671.

[173] *Thomas*, 968 F.2d at 1024.

does not do so.  Rather, in both Oppositions, Carlson only cites generally to the Carrington Defendants' Responses to Plaintiff's First Set of Requests for Admission, the Deposition Transcript of Kirk A. Cullimore, and the Cullimore Defendants' Responses to Plaintiff's First Set of Discovery Requests.[174]  The court disregards these exhibits because Carlson fails to cite to them with particularity or explain how they support his allegations.[175]  He also cites to his Amended Complaint,[176] which is insufficient to withstand a summary judgment motion.[177]  The only exhibit he cites to with reference to specific facts is the Resident Activity Log.[178]  But the court's review of the Log does not reveal how it supports any of the elements under *Jackson*.[179]

Carlson also fails to provide the court with any legal authority suggesting Defendants' alleged behavior constitutes third-party harassment.[180]  Carlson contends Defendants harassed him by failing to comply with Utah Code § 78B-8-302.[181]  But that statute does not govern service of a Notice to Vacate.  A different statute, Utah Code § 78B-6-805, does, which Carlson has provided no evidence Defendants violated.  Perhaps Carlson's strongest allegation in support of his claim for third-party harassment is that Defendants delivered him the Notice to Vacate, but

---

[174] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 37; *Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 21.

[175] The court notes it previously warned Carlson this conduct runs afoul of the Federal Rules of Civil Procedure and the Local Rules of Civil Practice.  *See Memorandum Decision and Order Denying Plaintiff's Motion for Summary Judgment* at 5 (first quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000); and then citing *Doe v. Univ. of Denver*, 952 F.3d 1182, 1191 (10th Cir. 2020)).

[176] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 37.

[177] *See Adler*, 144 F.3d at 671.

[178] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 37; *Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 21.

[179] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 37; *see also Resident Activity Log*.

[180] Carlson also provides no authority suggesting a defendant's threat of pursuing Rule 11 sanctions against a plaintiff's *attorney* supports any affirmative claim for the *plaintiff*.

[181] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 37.

he has failed to point to any legal authority suggesting the delivery of such a notice in accordance with a lease agreement constitutes constructive eviction or otherwise establishes harassment.  In addition to the absence of any authority, the court notes that finding for Carlson on this issue would run counter to sound policy.  It would be tantamount to forcing a landlord to renew leases with her tenants, lest she expose herself to liability simply for exercising her legal right not to enter into another contract with the tenant.

At bottom, Carlson has failed to go beyond his Amended Complaint and "set forth specific facts" demonstrating his third-party harassment claim is entitled to survive summary judgment or provide the court with any legal authority suggesting his factual allegations support his claim.  Accordingly, the court grants summary judgment to all Defendants on Carlson's third-party harassment claim.

## III.    ADA

Defendants argue summary judgment on Carlson's ADA claims is appropriate because the ADA does not apply to them.[182]  Carlson does not meaningfully dispute this argument with respect to the Cullimore Defendants.[183]  Accordingly, Carlson waived any challenges to this argument and the court grants summary judgment to the Cullimore Defendants on that basis.  As

---

[182] *See Cullimore Defendants' Motion for Summary Judgment* at 11; *Carrington Defendants' Motion for Summary Judgment* at 31–33.

[183] In opposition, Carlson does not offer any legal authority to support the proposition that the ADA applies to the Cullimore Defendants except for a few conclusory references to the ADA.  *See Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 2 ("The Utah Fair Housing Act, Federal Fair Housing Act and Americans [w]ith Disabilities Act, in tandem with the Lease Agreement expressly intend to benefit the disabled, including Plaintiff Danny Carlson, an individual with Multiple Sclerosis."); *id.* at 16 ("As a disabled individual, the Plaintiff is a member of a protected class under anti-discrimination laws, including the Americans with Disabilities Act, the Utah Fair Housing Act and the Federal Fair Housing Acts."); *id.* at 19 ("[T]he Cullimore Defendants are in the unique position of being able to protect Utah's disabled individuals from eviction and unlawful detainer through proper counsel of their clients with respect to Fair Housing laws and anti-discrimination laws such as the Americans [w]ith Disabilities Act.").

to the Carrington Defendants, the court finds the ADA does not apply to them for the reasons stated below.

The ADA prohibits discrimination against individuals in places of "public accommodation."[184]  In part, the statute defines a public accommodation as "an inn, hotel, motel, or other place of lodging."[185]  This court has previously found a residential apartment complex is not a public accommodation within the meaning of the statute because inns, hotels, and motels are characterized by short-term stays while apartment complexes house long-term residents.[186]

The Carrington Defendants contend "an apartment complex like Carrington [Square] . . . is not a 'public accommodation'" under the statute.[187]  Carlson admits in opposition he "is not privy to any holding wherein the ADA is construed to apply to apartment complexes to date" but argues "prior holdings precluding [the ADA's] application to apartment complexes [are] misplaced or, at best, misguided."[188]

The court agrees with Defendants and declines to take a position contrary to persuasive case law.  There is no dispute that Carrington Square houses long-term residents; after all, Carlson resided there for over six years.[189]  The court therefore finds the ADA does not apply to the Carrington Defendants because Carrington Square is not a place of public accommodation.

---

[184] 42 U.S.C. § 12182(a).

[185] *Id.* § 12181(7)(A).

[186] *See Phibbs v. Am. Prop. Mgmt.*, No. 2:02-cv-260-DB, 2008 WL 746977, at *3 (D. Utah Mar. 19, 2008).

[187] *Carrington Defendants' Motion for Summary Judgment* at 32.

[188] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 24–25.  Carlson also argues the "more recent" promulgation of a Final Rule by the Department of Justice counsels toward a finding that the ADA applies to residential apartment complexes.  *Id.* at 26–27.  He contends the test the court should apply is "whether or not the entity receives federal funding."  *Id.* at 27.  But even assuming the regulation purports to apply the ADA's commands to residential apartment complexes, Carlson does not explain why a federal regulation trumps prior court holdings interpreting the ADA's statutory text.  Nor does he provide any legal authority suggesting the court should apply his "federal funding" test.  Ultimately, the court finds these arguments unpersuasive.

[189] *See Carlson's Second Declaration* ¶ 16.

Accordingly, the court grants summary judgment to the Carrington Defendants on Carlson's ADA claim.

## IV.    Negligence

Carlson brings a negligence claim against the Carrington Defendants,[190] who argue summary judgment is appropriate because Carlson has failed to designate an expert to testify about causation.[191]  The court agrees.[192]

Under Utah law, a plaintiff must prove four elements to prevail on a negligence claim: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused (4) the plaintiff to suffer legally compensable damages."[193] "It is fundamental that the burden rests upon the plaintiff to establish the causal connection between the injury and the alleged negligence of the defendant."[194]  "Where the injury involves obscure medical factors which are beyond an ordinary lay person's knowledge," Utah law requires "expert testimony that the negligent act probably caused the injury."[195]

The Carrington Defendants contend Carlson's situation mirrors the facts in *Fox v. Brigham Young University*, where the Utah Court of Appeals held, as a matter of law, that the plaintiff "needed expert testimony to establish her prima facie case of causation" because she had "tied the cause of her fall to medical factors sufficiently complicated to be beyond the ordinary

---

[190] *See Amended Complaint* ¶¶ 201–08.

[191] *See Carrington Defendants' Motion for Summary Judgment* at 43–44.

[192] Because this issue is dispositive, the court need not address any additional arguments regarding Carlson's negligence claim.

[193] *Cope v. Utah Valley State Coll.*, 342 P.3d 243, 248 (Utah 2014) (citation omitted).

[194] *Jackson v. Colston*, 209 P.2d 566, 568 (Utah 1949) (citation omitted).

[195] *Beard v. K-Mart Corp.*, 12 P.3d 1015, 1019–20 (Utah Ct. App. 2000) (quoting *Riggins v. Bechtel Power Corp.*, 722 P.2d 819, 824 (Wash. Ct. App. 1986)).

senses and common experience of a layperson."[196]  Carlson does not offer a contrary position.[197]
The court therefore grants summary judgment to the Carrington Defendants on Carlson's
negligence claim.[198]

### V.    Negligent Employment

All Defendants move for summary judgment on Carlson's negligent employment claims.
In his Opposition, Carlson withdraws his negligent employment claims against the Cullimore
Defendants.[199]  The court therefore grants summary judgment to the Cullimore Defendants on
Carlson's negligent employment claims on that basis.

"To recover under a theory of negligent hiring, supervision, or retention, a 'plaintiff must
show that [the defendant] had a duty to protect him from harm *at the hands of its employees*, a
negligent breach of that duty, and the harm and damages caused by that breach.'"[200]  The
Carrington Defendants argue "it is unclear what harm" Carlson suffered at the hands of
Defendants' employees.[201]  The Carrington Defendants further argue Carlson "has not alleged

---

[196] *Fox v. Brigham Young Univ.*, 176 P.3d 446, 452 (Utah Ct. App. 2007).

[197] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment*.  Independent of Carlson's waiver, the court agrees with the Carrington Defendants that summary judgment is appropriate because Carlson has not designated an expert to testify as to causation.  The parties do not dispute Carlson suffers from multiple sclerosis, which he alleges caused his fall.  The court finds multiple sclerosis "involves obscure medical factors which are beyond an ordinary lay person's knowledge," *Beard*, 12 P.3d at 1019, and therefore necessitates expert testimony to prove causation.

[198] Carlson also argues the assumption of risk doctrine precludes summary judgment.  *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 38–43.  But his attempt to invoke this doctrine to establish Defendants owed him a duty is misplaced.  The court agrees with Defendants that assumption of risk "is an affirmative defense, not a basis for establishing a duty."  *Carrington Defendants' Reply to Carlson's Opposition to Carrington Defendant's Motion for Summary Judgment* at 34 n.4; *see also Rutherford v. Talisker Canyons Fin., Co.*, 445 P.3d 474, 488–90 (Utah 2019).

[199] *See Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 1.

[200] *Castellanos v. Tommy John, LLC*, 321 P.3d 218, 234 (Utah Ct. App. 2014) (quoting *J.H. v. West Valley City,* 840 P.2d 115, 124 (Utah 1992)).

[201] *Carrington Defendants' Motion for Summary Judgment* at 49.

that he suffered any injury when an employee delivered" the Notice to Vacate.[202]  Carlson does not address any of these arguments in opposition, so the court deems them waived.  The court therefore grants summary judgment to the Carrington Defendants on Carlson's negligent employment claims.

## VI.    Breach of Contract

All Defendants move for summary judgment on Carlson's breach of contract claim.[203] For the reasons stated below, the court grants summary judgment to Defendants on that claim.

Under Utah law, the plaintiff bears the burden to prove four elements of a breach of contract claim: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[204]  A limited exception to these requirements exists for third-party beneficiaries, who are persons "recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration."[205]  This exception only applies when a contract is "undertaken for the plaintiff's direct benefit" and "affirmatively make[s] this intention clear."[206]  It is not sufficient "that the parties to the contract know, expect or even intend that others will benefit from the [contract]."[207]

---

[202] *Id.* at 49–50.

[203] *Id.* at 22–26; *Cullimore Defendants' Motion for Summary Judgment* at 11–13.

[204] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001) (elements); *see also Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1176, 1187 (D. Utah 2015) (burden of proof).

[205] *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 684 (Utah 2001) (quoting *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980)).

[206] *See id.* (quoting *Am. Towers Owners Assoc., Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1188 (Utah 1996)).

[207] *See id.* (alteration in original) (quoting *Am. Towers*, 930 P.2d at 1188).

### A.  Cullimore Defendants

The Cullimore Defendants contend no contract between them and Carlson exists, and Carlson has provided no evidence to rebut this assertion.[208]  Usually, where no contract exists between the parties, then a plaintiff's breach of contract claim would fail as a matter of law for failure to establish a necessary element.  But Carlson argues the Cullimore Defendants are exposed to breach of contract liability because (1) the Cullimore Defendants drafted Carlson's Lease Agreement with the Carrington Defendants,[209] or, alternatively, because (2) Carlson is a third-party beneficiary of the contract between the Cullimore Defendants and the Carrington Defendants.[210]

The court is not persuaded.  First, Carlson cites no authority supporting his first proposition, so the court disregards it.[211]  Regarding his second argument, the court agrees with the Cullimore Defendants that no evidence supports the conferral of third-party beneficiary status on Carlson.  Nowhere in the contract between the Carrington Defendants and the Cullimore Defendants is Carlson mentioned, nor does the contract appear to confer third-party beneficiary status on any individual or entity other than the parties to the agreement.[212]

The court therefore grants summary judgment to the Cullimore Defendants on Carlson's breach of contract claim.

---

[208] *Cullimore Defendants' Motion for Summary Judgment* at 12.

[209] *See Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 3.

[210] *See id.* at 13–20.

[211] *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (quoting *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1244 (10th Cir. 2003)) ("A party forfeits an issue it does not support with 'legal authority or argument.'").  Carlson also seems to acknowledge that his claim fails under current law: "Simply stated, Plaintiff is asking this Court to impute a duty on landlord-tenant lawyers to protect the disabled . . . ." *Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 19–20.  The court declines to do so.

[212] *See David R. Todd's Affidavit and Agreement on Collection Work and Evictions* at 6–10.

## B.  Carrington Defendants

The Carrington Defendants argue for summary judgment on Carlson's breach of contract

claim for two reasons.[213]  First, they contend no provision in the Lease Agreement obligated

them to renew Carlson's lease[214]—and, in fact, the Lease Agreement expressly allowed them to

refuse to renew, provided they give Carlson thirty days of notice.[215]  By providing notice to

Carlson on June 21, 2021 to vacate the apartment by July 31, 2021, the Carrington Defendants

maintain they could not have breached the Lease Agreement on that basis.[216]  Second, they argue

they could not have breached the Lease Agreement by failing to install grab bars in Carlson's

apartment because he failed to request installation in writing as required by the contract.[217]

In opposition to Defendants' first argument, Carlson suggests the parties' course of

dealing or course of performance required Defendants to renew his lease.[218]  The court disagrees.

Under Utah law, the "express terms" of an agreement "prevail over [the parties'] course of

---

[213] *Carrington Defendants' Motion for Summary Judgment* at 22–26.

[214] *Id.* at 23–24.

[215] *Id.* (citing *Residential Rental Agreement* at 78 ¶ 46).

[216] *See id.*; *see also Notice to Vacate.*

[217] *See Carrington Defendants' Motion for Summary Judgment* at 24–26; *see also* Dkt. 146-4, *Carlson's Deposition* at 43:17–45:4.  Carlson objects to the use of his deposition testimony (1) in general, arguing it is inadmissible because it is both unsworn and substantially more prejudicial than probative, and (2) in particular to the cited passage, arguing it calls for a legal conclusion and is speculative.  *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 16, 21; Dkt. 191-3, *Evidentiary Objection.*  The court first finds Carlson did not waive all evidentiary objections by failing to raise them during the deposition.  *See* Fed. R. Civ. P. 32(b).  Turning to the merits, the court overrules Carlson's  general objections to the deposition testimony.  The deposition transcript indicates, in two separate places, that the reporter swore in Carlson.  *See Carlson's Deposition* at 4:1–5, 148:1–20.  In any case, the court agrees with the Carrington Defendants that even if Carlson had not been sworn his testimony is generally admissible under Federal Rule of Evidence 801(d)(2)(A).  In addition, Carlson waived any objection to "an error or irregularity" in the taking of the deposition by failing to raise it in time.  *See* Fed. R. Civ. P. 32(d)(3)(B).  Carlson's Rule 403 objection is overruled because he does not point to, and the court cannot readily discern, how any unfair prejudice to Carlson results by relying on his deposition testimony.  As to his specific evidentiary objections, the court sustains them to the extent any answer offers a legal conclusion or does not rely on his personal knowledge.  But Carlson's admissions that he "verbally" made a request for grab bars and that he does not have any written documents referencing a request for grab bars are admissible, so the court overrules his objections to those statements.

[218] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 35, 55.

performance [and] course of dealing" where they are inconsistent.[219]  Here, the express terms of the Lease Agreement provide that the Carrington Defendants could refuse to renew the lease, which prevails over any inconsistent course of dealing or course of performance established by the parties.

Turning to the Carrington Defendants' second argument, Carlson contends "a contractual duty that directly contradicts an entitled-to right under the law must be stricken as unenforceable. Under the law, Plaintiff need not request [grab bars] in writing.  Since federal and state law trump the unenforceable contractual obligation, this argument must be rejected outright."[220] Carlson provides no legal authority supporting any of these arguments, so the court disregards them.[221]

The court now turns to Carlson's final breach of contract argument.  Carlson focuses his argument, for several pages, on why the Lease Agreement should not be enforced due to its procedural and substantive unconscionability.[222]  The court construes Carlson as arguing the court should excuse his failure to comply with the Lease Agreement's written request provision (i.e., his performance, a necessary element of a breach of contract claim[223]) because the Lease Agreement is unconscionable.  But Carlson provides no legal authority to support this argument. Further, under Utah law, unconscionability is a defense *against* enforcement of a contract—not an affirmative cause of action entitling a plaintiff to relief.[224]  Carlson's unconscionability argument is therefore unavailing.

---

[219] Utah Code § 70A-1a-303(5).

[220] *Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 35.

[221] *See Eateries, Inc.*, 346 F.3d at 1232.

[222] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 47–59.

[223] *See Bair*, 20 P.3d at 392.

[224] *See Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985).

At bottom, Carlson cannot establish breach of contract by the Carrington Defendants for refraining from renewing his lease or installing grab bars in his apartment. No provision in the Lease Agreement required the Carrington Defendants to renew Carlson's lease, so they could not have breached the contract by failing to renew it. And the court cannot excuse Carlson's failure to request grab bars in writing as mandated by the Lease Agreement. The court therefore grants summary judgment to the Carrington Defendants on Carlson's breach of contract claim.

## VII.    Fraudulent Misrepresentation

Carlson brings a claim for fraudulent misrepresentation against the Cullimore Defendants.[225] The Cullimore Defendants argue Carlson has failed to establish any elements of that claim.[226] Carlson does not cite to any evidence in the record or provide any legal authority in opposition.[227] On that basis, the court grants summary judgment to the Cullimore Defendants on Carlson's fraudulent misrepresentation claim.[228]

## VIII.    Conspiracy

Carlson brings claims for conspiracy against all Defendants.[229] Defendants argue summary judgment in their favor is appropriate because Carlson has not provided evidence of

---

[225] *See Amended Complaint* ¶¶ 239–51.

[226] *See Cullimore Defendants' Motion for Summary Judgment* at 14–15.

[227] In opposition, Carlson argues, "Plaintiff was ultimately damaged by the failure to preserve evidence, the nondisclosure of insurance information, and the misrepresentations as to the parties' relationship." *See Carlson's Opposition to Cullimore Defendants' Motion for Summary Judgment* at 5. But he does not cite to any factual or legal support for these assertions, so the court disregards them. *See Eateries, Inc.*, 346 F.3d at 1232.

[228] Carlson's only arguments regarding his fraudulent misrepresentation claim appear in his Reply to the Cullimore Defendants' Opposition to Carlson's Motion for Summary Judgment. *See* Dkt. 184, *Reply Affirmation* at 5–6. The court considers these arguments waived because Carlson has left the Cullimore Defendants without a meaningful opportunity to respond to his allegations or arguments. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.").

[229] *See Amended Complaint* ¶¶ 278–83.

any unlawful, overt acts in furtherance of a conspiracy.[230]  With respect to the Cullimore Defendants, Carlson does not dispute this argument in opposition.  The court therefore deems the argument waived and grants summary judgment to the Cullimore Defendants on Carlson's conspiracy claim.

Under Utah law, to prove civil conspiracy, a plaintiff must establish five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[231]  "If the object of the alleged conspiracy or the means used to attain it is lawful, even if damage results to plaintiff or defendant acted with a malicious motive, there can be no civil action for conspiracy."[232]

Carlson argues his "eviction in retaliation for lawful commencement of suit asserting violations of civil rights" constituted the unlawful, overt act at issue.[233]  But Carlson has not provided any evidence he was evicted.[234]  Failure to support his conspiracy claim by reference to evidence in the record entitles the Carrington Defendants to judgment as a matter of law on this claim.[235]  The court therefore grants summary judgment to the Carrington Defendants on Carlson's conspiracy claim.

---

[230] *Carrington Defendants' Motion for Summary Judgment* at 51–52; *Cullimore Defendants' Motion for Summary Judgment* at 15–16.

[231] *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993) (quoting *Israel Pagan Est. v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987)).

[232] *Israel Pagan Est.*, 746 P.2d at 792.

[233] *See Carlson's Opposition to Carrington Defendants' Motion for Summary Judgment* at 43.

[234] At oral argument, Carlson's attorney conceded no formal eviction proceedings against Carlson occurred but maintained Carlson was constructively evicted.  As explained above, counsel has not pointed the court to any legal authority supporting a finding of constructive eviction.  *See supra* § II.

[235] *Celotex Corp.*, 477 U.S. at 323.

## IX.    Carlson's Motions for Summary Judgment

The court now turns to Carlson's Motions for Summary Judgment.  As to his Motion for Summary Judgment Against the Cullimore Defendants, the court denies it because each of Carlson's claims fail for the reasons stated above.  As to the Carrington Defendants, Carlson attempts to raise new claims for the first time.[236]  First, he purports to assert against the Carrington Defendants a claim for unlawful retaliation in violation of 42 U.S.C. § 3617 and Utah Code § 57-21-7.[237]  Second, Carlson maintains he has "simultaneously" asserted a claim of negligence "in tandem" with "[e]ach and every one of" his other causes of action.[238]  The court addresses these claims here.

Asserting a new claim in summary judgment briefing runs afoul of Federal Rule of Civil Procedure 8(a)(2), which requires a plaintiff to provide in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief."  With respect to Carlson's retaliation and additional negligence claims, he did not do so.  Carlson does not cite to 42 U.S.C. § 3617 or Utah Code § 57-21-7 in his Amended Complaint—he does not even mention the word "retaliation" in it.[239]  Nor does he suggest in the Amended Complaint that he intended to bring secondary claims for negligence along with his other causes of action.[240]

The Tenth Circuit has held "[a]n issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to Federal

---

[236] At oral argument, the court asked Carlson's counsel about three claims on which Carlson purports to seek summary judgment against the Carrington Defendants: discrimination under the Rehabilitation Act, unlawful retaliation under the fair housing statutes, and new theories of negligence liability.  Carlson's counsel confirmed the Amended Complaint includes "contextual" references to the Rehabilitation Act but does not state a Rehabilitation Act claim.

[237] *See Carlson's Motion for Summary Judgment Against the Carrington Defendants* at 44–46.

[238] *See id.* at 49.

[239] *See Amended Complaint*.

[240] *See id.*

Rule of Civil Procedure 15."[241]   However, the court declines to permit such amendment under the present circumstances.  Carlson has not sought leave for such amendment either in his summary judgment briefing or in a separate motion.  The Motions for Summary Judgment filed by the Carrington Defendants and the Cullimore Defendants did not prompt Carlson to move for leave to amend, either.  But even if he had, the court cannot discern how it could permit amendment at this stage without unjustly prejudicing Defendants.  Carlson's new claims are first offered in briefing submitted on October 10, 2024, more than five months after the deadline for amendment and two months after the close of fact discovery.[242]   The court therefore declines to allow Carlson to assert new claims for retaliation and negligence in this action at the summary judgment stage.[243]

As none of Carlson's claims against them survive, the court denies Carlson's Motion for Summary Judgment Against the Carrington Defendants.

## X.    Carlson's Motion for Default Judgment

As an alternative to summary judgment, Carlson asks the court to enter default judgment against Defendant Bach Homes as a sanction under Federal Rule of Civil Procedure 37(b)(2)(A)(vi) for failure to comply with its discovery obligations.[244]   Defendants oppose

---

[241] *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011) (citing *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998)).

[242] *See* Dkt. 124, *Stipulated Fourth Amended Scheduling Order*.

[243] *See also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) ("We do not believe, however, that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.  This practice, if permitted, would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances.").

[244] *Motion for Default Judgment*.

Carlson's request and ask the court to award Defendants the attorneys' fees they incurred in opposing the motion.[245]

"Default judgment is generally considered a harsh sanction that should be used only when a party's noncompliance is due to 'willfulness, bad faith, or any fault of the [disobedient party]' and not when a party is unable to comply with a discovery order."[246]

Carlson argues Bach Homes "refus[ed] to furnish discovery in good faith" and gave "evasive and unresponsive" replies in its Answer, which hindered Carlson's ability to litigate the case.[247]  In opposition, the Carrington Defendants argue Carlson "mischaracterize[es] the record" because:

> Bach Homes has submitted an Answer, Initial Disclosures, written answers to discovery, and Bach Homes has been represented in all filings submitted to the Court in multiple documents.  Bach Homes has furnished all responsive documents it has, but since it was not involved, admittedly, the documents are limited, as would be expected.[248]

Defendants further argue default judgment is not appropriate because Carlson does not point to any court order violated by Bach Homes and his "criticism of Bach Homes' Answer is not a discovery violation."[249]

The court agrees with Defendants.  Carlson has provided insufficient evidence to support imposing the "harsh sanction" of default judgment on Bach Homes.  On the record before the court, any failure by Bach Homes to provide documents appears to stem from its inability to

---

[245] *Default Opposition.*

[246] *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (alteration in original) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)).

[247] *Motion for Default Judgment* at 3.

[248] *Default Opposition* at 3.

[249] *Id.*

comply with Carlson's requests because it has no documents related to those requests rather than bad faith.  For these reasons, the court denies Carlson's Motion for Default Judgment.

The court also denies the Carrington Defendants' request for attorneys' fees.  As the court informed Defendants in its November 4, 2024 Order, "If Defendants believe such a sanction is proper, they must file an independent motion for relief."[250]

## XI.    Carlson's Motions to Exclude Expert Testimony

Carlson moves to exclude the testimony of three expert witnesses offered by the Carrington Defendants.[251]  Because none of Carlson's claims have survived, the court denies these Motions as moot.

---

[250] Dkt. 186, *Order Overruling Plaintiff's Objection to Magistrate Order* at 6 n.28 (first citing DUCivR 1-2 ("On a party's motion or on its own, the court may impose sanctions against an attorney, a party, or both for violating these rules."); and then citing DUCivR 7-1(a)(3) ("A party may not make a motion . . . in a response or reply.")).

[251] *See Motion to Exclude Expert Dorey*; *Motion to Exclude Experts Mecham & Harris*.

## CONCLUSION

For the reasons explained above, the court:

- GRANTS the Cullimore Defendants' Motion for Summary Judgment;[252]

- GRANTS the Carrington Defendants' Motion for Summary Judgment;[253]

- DENIES Carlson's Motion for Summary Judgment Against the Cullimore Defendants;[254]

- DENIES Carlson's Motion for Summary Judgment Against the Carrington Defendants;[255]

- DENIES Carlson's Motion for Default Judgment;[256]

- DENIES Carlson's Motion to Exclude Expert Dorey;[257]

- DENIES Carlson's Motion to Exclude Experts Mecham & Harris;[258] and

- DENIES the Carrington Defendants' Motion to Amend.[259]

As no claims survive, the Clerk of Court is directed to close the case.

SO ORDERED this 4th day of April, 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[252] Dkt. 142.

[253] Dkt. 146.

[254] Dkt. 147.

[255] Dkt. 150.

[256] Dkt. 153.

[257] Dkt. 160.

[258] Dkt. 166.

[259] Dkt. 217.